653 P.2d 166

STATE of N.M., ex rel., RISK MANAGEMENT DIVISION OF DEPARTMENT OF FINANCE & ADMINISTRATION, Plaintiff-Appellant,

v.

GATHMAN–MATOTAN ARCHITECTS AND PLANNERS, INC., & W.C. Kruger and Associates Architects-Planners, Inc., Defendants-Appellees,

and

Armour World Wide Glass Co., Aetna Casualty & Surety Co., Central Glass & Mirror Co., Inc., John Doe Insurance Co., International Surplus Lines Insurance Company, Defendants.

Jimmy URIOSTE, Special Administrator of the Estate of Mario Urioste, Deceased, Plaintiff,

v.

WARDEN OF THE PENITENTIARY OF N.M., Third-Party Plaintiff & Defendant-Appellant,

and

State of New Mexico Corrections & Criminal Rehabilitation Department of the State of New Mexico; Bruce King, Governor of the State of New Mexico; the Secretary of Corrections & Criminal Rehabilitation, Defendants-Third Party Plaintiffs,

and

Gathman-Matotan Architects and Planners, Inc., & International Surplus Lines Insurance Company, Defendants-Third Party Defendants-Appellees.

Jimmy URIOSTE, Special Administrator of The Estate of Mario Urioste, Deceased, Plaintiff,

v.

STATE of New Mexico CORRECTIONS & CRIMINAL REHABILITATION DEPARTMENT of the State of New Mexico; Bruce King, Governor of the State of New Mexico; the Secretary of Corrections & Criminal Rehabilitation, De-

fendants-Third-Party Plaintiffs Defend-ants-Appellants,

and

**Warden of the Penitentiary of New Mex-ico, Third-Party Plaintiff Defendant,**

**Gathman-Matotan Architects and Plan-ners, Inc., & International Surplus Lines Insurance Company, Defendants-Third Party Defendants-Appellees.**

**Nos. 5670 to 5672.**

Court of Appeals of New Mexico.

Aug. 10, 1982.

Certiorari Quashed Nov. 2, 1982.

Eric D. Lanphere, Donald C. Schutte, J. Victor Pongetti, Johnson & Lanphere, P.A., Albuquerque, for defendant-appellee W.C. Kruger & Assoc. & Architects Planners, Inc.

John A. Bannerman, Kevin V. Reilly, Su-tin, Thayer & Brown, P.A., Albuquerque, for defendants-appellees Gathman-Matotan Architects and International Surplus Lines Ins. Co. as Insurer of Gathman-Matotan Architects and Planners, Inc.

Bruce Hall, Rodey, Dickason, Sloan, Akin & Robb, P.A., Wayne C. Wolf, Civerolo, Hansen & Wolf, P.A., Douglas A. Baker, Kenneth H. Harrigan, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for plaintiff-appellant, third party plaintiff-appellant Risk Mgt. Div., of Dept. of Fi-nance, Corrections and Crim. Rehab. Dept. of State of N.M., Bruce King, Governor of State of N.M., Sec'y of Corrections & Crim. Rehab. and Warden of the State Penitentia-ry.

## OPINION

LOPEZ, Judge.

We consolidate the interlocutory appeals taken in *State v. Gathman-Matotan* and *Urioste v. Warden of the Penitentiary of New Mexico.* In each case, the various state parties alleged a cause of action for breach of implied warranty of sufficiency of plans and specifications against Gath-man-Matotan Architects and Planners, Inc. (Gathman), and W.C. Kruger and Associ-ates Architects-Planners, Inc. (Kruger). In both cases, the trial court dismissed the claims for failure to state a claim on which relief could be granted. We affirm.

In 1977, the New Mexico Department of Finance and Administration, Property Con-trol Division, contracted with Kruger to prepare an analysis of necessary renova-

tions and improvements at the penitentiary to keep it a viable institution. Included in the first phase of renovations were recommendations for improving the security of the central control area of the prison. The recommendations included remodeling a bay window in the central control area. The remodeling consisted of replacing a steel gridwork which framed small panes of glass, with large sheets of bullet-resistant glass.

The New Mexico Department of Finance and Administration, Property Control Division, then contracted with Gathman for architectural services for the penitentiary renovations based on the Kruger report. The sheets of bullet-resistant glass were installed in the central control area prior to February 2, 1980.

On February 2 and 3, 1980, the prisoners at the penitentiary staged a riot, during which prisoners were killed and injured by other prisoners, correctional officers were injured, and there was extensive property damage to the institution. The prisoners gained access to the central control area by breaking the newly-installed glass, and thereby took over the control area.

The Risk Management Division of the New Mexico Department of Finance and Administration filed suit in Bernalillo County district court against Gathman and Kruger alleging negligence, breach of contract, breach of an implied warranty to use reasonable skill and breach of an implied warranty of "sufficiency of the recommendations, designs, plans and specifications to provide a control center adequate to serve as a central stronghold in the event of an inmate uprising."

The Urioste suit is a consolidation of three suits filed in Santa Fe County district court against various state parties for damages for wrongful death and personal injuries resulting from the riot. The state parties filed third party complaints against Gathman and Kruger alleging causes of action similar to those stated in its separate suit. The three plaintiffs then amended their complaints to assert claims against the third-party defendants. The state parties then filed cross-claims against the third-party defendants.

In each case, the trial court dismissed the cause of action for breach of an implied warranty of the sufficiency of the plans and specifications, for failure to state a cause of action on which relief could be granted, pursuant to N.M.R.Civ.Pro. 12(b)(6), N.M.S.A.1978 (1980 Repl.Pamph.). When considering a motion to dismiss under Rule 12(b)(6), the well pleaded facts alleged in the complaint are taken as true. *Runyan v. Jaramillo,* 90 N.M. 629, 567 P.2d 478 (1977). The motion should not be granted unless the court determines that the plaintiffs cannot obtain relief under any state of facts provable under the alleged claims. *Eldridge v. Sandoval County,* 92 N.M. 152, 584 P.2d 199 (Ct.App.1978).

The question on appeal is whether New Mexico recognizes a cause of action against an architect for breach of an implied warranty to furnish plans and specifications adequate for a specified purpose. The question is one of first impression in New Mexico. See *Staley v. New,* 56 N.M. 756, 250 P.2d 893 (1952), in which the New Mexico supreme court hypothesized such a warranty in dicta, but did not decide whether the warranty should be recognized in New Mexico. The decisions on this issue from courts of other jurisdictions have not been uniform. The appellants are careful to limit the question to an implied warranty under contract, as opposed to the issue of strict liability in tort. Therefore, we limit our discussion accordingly.

New Mexico has recognized an implied warranty to use reasonable skill under contract law, set out in N.M.U.J.I.Civ. 8.26, N.M.S.A.1978 (Repl.Pamph.1980). *Garcia v. Color Tile Distributing Company,* 75 N.M. 570, 408 P.2d 145 (1965); *Clear v. Patterson,* 80 N.M. 654, 459 P.2d 358 (Ct.App.1969). Instruction 8.26 states that

When a person undertakes to practice a trade or to do a kind of work which either requires some learning or special training or experience, he is obligated to exercise that degree of skill which a reasonably prudent person skilled in such work would exercise in those circumstances.

The gist of the implied warranty stated in instruction 8.26 is that a person who contracts to do work requiring certain skills must not be negligent in exercising those skills. In a true warranty setting, only the results of the work would be compared with the work which was contracted to be done. Instruction 8.26 requires a showing of negligence in the performance of the work which was contracted to be done. Although the breach of the implied warranty to use reasonable skill lies in contract, the requirements of proof inherent in the application of the warranty are similar to a cause of action in tort negligence. These appeals do not involve the implied warranty to use reasonable skill.

In the present case, the state parties wish to utilize an implied warranty of the sufficiency of plans and specifications against the architects. This would not entail a showing that the architects were negligent in performing their work, but only that the design or specifications for the central control area were not fit for their intended purpose. *City of Mounds View v. Walijarvi*, 263 N.W.2d 420 (Minn.1978).

A minority of cases take the view that an architect or engineer impliedly warrants the fitness of his design or plans for their intended purposes. *Broyles v. Brown Eng'r. Co.*, 275 Ala. 35, 151 So.2d 767 (1963); *United States Fidelity & Guaranty Co. v. Jacksonville State Univ.*, 357 So.2d 952 (Ala. 1978); See *Federal Mogul Corp. v. Universal Const. Co.*, 376 So.2d 716 (Ala.Civ.App. 1979); *Bloomsburg Mills, Inc. v. Sordoni Const. Co.*, 401 Pa. 358, 164 A.2d 201 (1960); *Hill v. Polar Pantries*, 219 S.C. 263, 64 S.E.2d 885 (1951); *Prier v. Refrigeration Eng'r Co.*, 74 Wash.2d 25, 442 P.2d 621 (1968); See also, *Staley v. New*, supra.

However, the majority view is that an implied warranty of sufficiency of plans and specifications will not be imposed against services performed by "professionals," including architects and engineers. In refusing to recognize the implied warranty, some courts have emphasized their reluctance to apply the concept of implied warranties to contracts for services generally, while other courts specify that contracts only for "professional" services do not carry the implied warranty. See *Gravely v. Providence Partnership*, 549 F.2d 958 (4th Cir. 1977); *La Rossa v. Scientific Design Company*, 402 F.2d 937 (3rd Cir.1968); *Allied Properties v. John A. Blume & Associates, Engineers*, 25 Cal.App.3d 848, 102 Cal.Rptr. 259 (1972); *Johnson-Voiland-Archuleta v. Roark Assoc.*, 40 Colo.App. 269, 572 P.2d 1220 (1977); *Audlane Lbr. & Bldrs. Sup. v. D.E. Britt Associates, Inc.*, 168 So.2d 333 (Fla.Dist.Ct.App.1964); *Borman's, Inc. v. Lake State Development Co.*, 60 Mich.App. 175, 230 N.W.2d 363 (1975); *City of Mounds View v. Walijarvi*, supra; *Queensbury Union, Etc. v. Jim Walter Corp.* 91 Misc.2d 804, 398 N.Y.S.2d 832 (1977); *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678 (Tex. Ct.App.1977).

Traditionally, architects, along with other professionals such as doctors and lawyers, do not promise a certain result. The professional is usually employed to exercise the customary or reasonable skills of his profession for a particular job. He "warranties" his work only to the extent that he will use the skill customarily demanded of his profession. The fact that New Mexico courts have imposed such a "warranty" does not lead inexorably to the conclusion, as appellants argue, that we should also recognize other implied warranties under professional service contracts, such as a warranty of sufficiency of plans and specifications.

In *Audlane Lbr. & Bldrs. Sup. v. D.E. Britt Associates, Inc.*, supra, the Florida court of appeals considered a case in which an engineer designed faulty wood trusses. In discussing an implied warranty action against the engineer, the court stated:

> With respect to the alleged "implied warranty of fitness," we see no reason for application of this theory in circumstances involving professional liability. . . . An engineer, or any other so-called professional, does not "warrant" his service or the tangible evidence of his skill to be "merchantable" or "fit for an intended use." . . . Rather, in the preparation of design and specifications as the

basis of construction, the engineer or architect "warrants" that he will or has exercised his skill according to a certain standard of care, that he acted reasonably and without neglect. Breach of this "warranty" occurs if he was negligent. Accordingly, the elements of an action for negligence and for breach of the "implied warranty" are the same. The use of the term "implied warranty" in these circumstances merely introduces further confusion into an area of law where confusion abounds.

We do not extend the concept of implied warranty, which was developed in reference to the sale of goods, to professional services. Cf. *Ruiz v. Southern Pacific Transportation Company,* 97 N.M. 194, 638 P.2d 406 (Ct. App.1981), in which this court stated that providing negligent services does not form the basis for an action in strict tort liability. The existing implied warranty to use reasonable skill gives an action under contract for negligent services, with the requisite proof of lack of reasonable or customary skill. The implied warranty sought by the appellants requires no showing of failure to use reasonable skill in the professional services rendered by the architects. Some of the reasons for the development of implied warranties, as well as strict liability in tort, in the area of sales of goods, was the lack of privity between the manufacturer and the buyer, the difficulty of proving negligence against a distant manufacturer using mass production techniques, and the better ability of the mass manufacturer to spread the economic risks among its consumers. See *La Rossa v. Scientific Design Company,* supra; *City of Mounds View v. Walijarvi,* supra. These considerations are not applicable in a contract for professional services.

We affirm the dismissal by the trial courts of the state parties' causes of action against Kruger and Gathman for breach of implied warranty of the sufficiency of their plans and specifications. The state parties still maintain their actions in negligence, breach of contract and breach of the implied warranty of reasonable skill. Appellate costs are to be paid by appellants.

IT IS SO ORDERED.

HENDLEY, J., concurs.

WOOD, J., concurs in result only.